Can we see the parties now in MBC Financial v. Boston Merchant Financial? Good morning, Your Honors. Nathan Pereira for Appellant MBC Financial Services Ltd. My clients have traveled today from Tunisia to seek justice for the $1.7 million fraud that was perpetuated upon them by the United States-based clearing firm. This case involves fraudulent, unauthorized, and manipulative trades that were placed on their clearing account, which is owned and operated by the United States clearing firm. There are three trades that we set forth in our complaint. These trades show on their face the fraudulent, manipulative, and unauthorized transactions that were undertaken for them. The spread on a typical forex transaction is two to four basis points. The trades that we set forth in our complaint— My question, though, is whether this should all be litigated here or in Switzerland, and why don't you address why you think it was error for the court to think it had to go to another forum? Your Honor, the district court— I mean, that's your appeal, right? Correct. All right, why don't you address that? The district court misconstrued the client opening application that my client signed when they formed the relationship with the clearing firm. That client—the corporate client agreement is a two-page document. It contains no integration clauses, no severability clauses, and does not relate in any way toward the acts that are alleged in the complaint. If any agreement controls this transaction, it would be the online trading agreement. Mr. Belosior in his affidavit stated that there was multiple agreements that were sent to my client. Did you not say before the district court that you knew or that your company knew that it was signing the corporate client agreement and that that governed authorized trading by the parties who signed it? No, Your Honor. They signed an acknowledgment that they received for agreements, and it was that acknowledgment that they signed that established— I'm not asking about that. Did you not concede in front of the district court that the corporate client agreement governs authorized trading by the parties who signed it? Authorized trading, yes, Your Honor. But here we have unauthorized trading and trades that were not imposed by the— So you're telling me that if an agreement governs authorized trading and you accuse the counterparty of unauthorized trading, that's necessarily not covered by the agreement? Your Honor, we allege that the trades that were not— Answer my question. Is that what your argument is? No, Your Honor. Our argument today is that there was fraud that was committed on these accounts and that the trades that were inputted on the clearing account were not done by the client. The client is a no-deal desk 4X broker. They do not input trades themselves. Their clients in the Middle East input these trades, and they're sent through the software that they are provided. Those trades go to the Boston-based trading desk of the appellees here, and that's where the trades are inputted. Here, the trades that were inputted were not by anybody in the Middle East, nor were they by any of the clients. They were done with fraud and deceit by the appellees, agents or otherwise. We haven't even provided the internet protocol addresses to identify the people who perpetuated the fraud. And that's why this case falls under the Commodities Exchange Act and the broad fraud provisions thereunder. The trades that are at issue— Forget that. I mean, it seems to me, as just Raji pointed out, that the fundamental question is why this form selection clause shouldn't be enforced, and why this matter shouldn't be sent to Switzerland. Well, it's fundamentally unfair to enforce the form selection clause because of the public policy considerations that the United States government has to regulate fraud that takes place within their jurisdiction. So even if the form selection clause is presumptively valid under the first three steps that are set forth in Phillips, it would be unfair to enforce it. But that would suggest that you could never have a form selection clause in areas in which United States law addresses an issue, and that's plainly not the law. No. In Martinez, the court enforced the form selection— There's nothing unfair where the parties themselves have agreed that the disputes they have will be dealt with in another country. There is something that's fundamentally unfair. Unfair to who? Unfair to my clients, the appellants. If they signed an agreement that they were going to be—they were going to litigate any disputes in another forum, I'm not sure how it's unfair to them. They didn't sign the corporate client agreement. There's no signature on that page. It's on the client— There are only two issues that are preserved. You've made a host of arguments, but there are only two issues that you preserved, and that's whether the agreement covers the dispute that you have here, and then—and the other—whether the enforcement of the form selection clause is unreasonable because it deprives you of due process. So, you know, those are the only two issues we're going to address here. I'd like to address the due process, because that goes to the heart of the matter. The form selection clause dictates that this should be decided in a tribunal in Switzerland, which is vague on its face, and there's nothing to stop the appellees in this case, if my client tried to go to Switzerland, from arguing that the tribunal set forth is not the appropriate tribunal. Also, there's no—there's no guarantee that if the case is commenced in Switzerland, they'd have access to any of the evidence from the Act 4X. These are all issues that Martinez and all of our other cases dealing with these form selection clauses, where the same arguments are made. We've dealt with that. I believe this is a unique case, Your Honor. I believe that the relationship between the appellants and the appellees is a unique one. Most of the clients that the appellees had had their own trading desks. Here, there was no trading desk, and therefore, there was no counterparty to these transactions. They were literally snookered by these individuals. They signed up an agreement in 2009. Those fraudulent trades were put on in 2012. The CFTC and NFA-registered entity was dissolved in 2013. During the commencement of this action, the BVI energy itself is dissolved. They've literally stolen my client's money and went away in the dead of the night. The online trading agreement clearly governs the acts that are in the complaint. It's not an integrated agreement. And the last point I'd like to make is that the form selection clause also contains a reduction in the statute of limitations, which, under the Refco case, is void. There's no severability clause that, if this is struck, would save this agreement. It's just fraud. It lacks mutuality. There's nothing barring the appellees from commencing this action in any jurisdiction that they would like to choose. The online trading agreement mentions an arbitration form. We don't know what that arbitration form is. The corporate client agreement that they attached in their papers is missing page 8. It was on page 8. The entire contract fails. Thank you. Thank you. May it please the Court. Jim Tuxbury on behalf of the appellees. We believe this is a fairly straightforward case, as Your Honor seemed to indicate. The district court here issued a 34-page opinion, well-reasoned. Why Switzerland? Why Switzerland, Your Honor? Well, our client is a BVI entity and has operations around the world. And so Switzerland is a relatively centrally located form. I mean, when you have transactions that are global in nature, you kind of need to pick a particular jurisdiction. And so Switzerland is relatively central. We have Russian operations. We have Middle East activities, too. So that would be the reason for the selection. But I don't think the selection of Switzerland is particularly unreasonable or somehow— No, I'm just wondering why Switzerland. I haven't seen it that often. Yes. Yeah, that's the reasoning, Your Honor. But I think, as this Court seemed to indicate, the decision of the district court is well-founded. I think you apply the factors of Phillips. There's really—it was reasonably communicated as part of the Corporate Client Agreement, an agreement that, to the district court, the appellant acknowledged having entered and agreed to those terms. It's expressly stated in there, the form selection clause. It includes mandatory language, something that the appellant obviously has not challenged on appeal either. Am I right that your client is or was a member of the NFA? They formally were. And how's that if this agreement, for example, says that we've got nothing to do with the U.S.? More or less. Well, the—I'm not sure, Your Honor, that I see the connection between those two. Well, it— My client, Mr. Belagor, was formally, but he was not—this dispute is between or the account agreement, Your Honor, is between Boston Merchant Financial Limited and NBC Financial. Oh, I understand. But Mr. Belagor is a central figure— Yes. —actually with the company, and he's a member of the NFA. No, he's no longer. He gave that up. I'd have to check the record, Your Honor, but I think in 2012—I forget exactly when, Your Honor, but he's not a member of the NFA. And so when you look to the fourth prong of Phillips of whether or not to enforce a form of Selection Clause, the burden is a heavy burden for the party opposing it to overcome, and as I think the Court indicated, they fall well short of that. There is no public policy ground that would preclude it here. The form contemplated by the agreement in Switzerland also includes that it will be governed by British Virgin Island law. As is clear from the record, both parties to this agreement are actually registered and formed in the British Virgin Islands, so there's seemingly nothing unfair about a party or entity being bound to the laws of which it is actually created and regulated by. So—and to Your Honor Raggi's point, there's nothing—there's no basis in the case law for Appellant's position that somehow a fraud claim is a unique claim that would somehow allow the—essentially the vacate of a valid form of Selection Clause. The provision regarding vacating a form of Selection Clause in light of public policy concerns in Bremen specifically identifies that it's public policy concerns that have been articulated either through prior case law or statute. There's none here, and Appellant don't cite any that would preclude enforcement of the form of Selection Clause here. The other issue I think that was preserved on appeal is whether or not the Commodities Exchange Act claim here is covered by the form of Selection Clause. We contend, as argued in our brief, that it does. The district court correctly found that it did. I think this Court's decision in Martinez really controls. This is a Commodities Exchange Act claim. There's no allegation that Appellant couldn't obtain— Not in Martinez. No, no. Sorry. This case is—Martinez is an ADA case, yes. But I think the issue there in Martinez is whether or not in the selected form the plaintiff could obtain the relief. And so here, there's no evidence in the record that the Appellant couldn't obtain whatever relief it seeks or believes it's entitled to in Switzerland applying the British Virgin Island law. But more importantly, applying BVI law to the interpretation of this agreement, which is for the scope and interpretation of the actual form of Selection Clause, and BVI law, as mentioned in our brief, looks to English law. Form of Selection Clauses are liberally construed. The High Court in Skype Technologies applied the Fiona Trust analysis to a form of Selection Clause, and by that, any language arising out of or relating to, which is the language you find here, encompasses effectively all claims that might arise out of the business relationship formed by the agreement. All nine causes of action in this complaint meet that, including the Commodities Exchange Act claim. And so therefore, we think the District Court's decision dismissing the complaint on four non-convenience grounds should be affirmed. But that is not all, obviously, Your Honors. The District Court also dismissed the complaint on 12B6, as well as Rule 9B, dismissing Count 1 in the Commodities Exchange Act claim, and then declining to accept supplemental jurisdiction of the remaining State Clause claims. We believe that decision is well-founded, and it simply should be affirmed. Thank you. I'd like to address the Appellee Counsel's statements that there is no case law that supports the strong public policy. In the Robie case, the Court clearly stated that the Securities Act is a strong public policy. In that case, they declined jurisdiction based on the Form Selection Clause, but there is a strong public policy of the United States Federal Government to enforce— But you have to be able to show that you could not get a reasonable assurance in the other country that you would be heard on your claims. I mean, you haven't made that showing here. Well, we were arguing with one hand tied behind our back because we don't know what tribunal in Switzerland that we're going to be sent to. In fact, Judge Batts— Is there a tribunal in Switzerland that you're aware of that wouldn't, at the very least, be able to deal with fraud claims? I'm not aware. The fact of the matter is that this fraud was perpetuated upon my client, and that the appellees have done everything they could possibly do to avoid their obligations here under— The appellee says that Mr. Belozer withdrew his registrations from the NFA and CFTC. He did that after the fraud was committed. And there's no corporate client right now. It's been dissolved. It was dissolved pending this appeal. So my client understands that there's a big burden that they must meet to invalidate a Form Selection Clause. There's public policy on both sides. But the purpose of the Commodities Exchange Act is to protect all market participants and ensure fair practice and honest dealing on the commodities exchanges. That is the public policy that we're arguing today, that when individuals remain in the United States, commit fraud within the United States, they should be held account in the United States. Thank you. Thank you. We're going to take the matter under advisement.